**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CAPITALPLUS EQUITY, LLC, | : | |
| Plaintiff, | : | **OPINION** |
| v. | : | Civil Action No. 07-321 (WHW) |
| PRISMATIC DEVELOPMENT CORP., | : | |
| Defendant. | : | |

**Walls, Senior District Judge**

Plaintiff CapitalPlus Equity ("CPE") and Defendant Prismatic Development Corporation ("Prismatic") have cross-moved for summary judgment. Pursuant to Federal Rule of Civil Procedure 78, these motions are decided without oral argument. The plaintiff's motion is denied. The defendant's motion is granted in part and denied in part.

**FACTS AND PROCEDURAL BACKGROUND**

The key facts in this case are not in dispute. This action arises out of the assignment of an $200,000 invoice due to a third party by the defendant to the plaintiff. Defendant Prismatic and a third party, Titan Architectural Products, Inc. ("Titan"), entered into a subcontract under which Titan was to furnish and install metal wall panels for the Essex County Hospital in Cedar Grove, New Jersey for which Prismatic was the general contractor (the "Subcontract"). This action concerns invoice number 23019 in the amount of $199,044.90 issued by Titan on January 25, 2006 for payment by Prismatic for certain building materials (the "Invoice"). CPE is an accounts receivable financier. On or about February 1, 2006, Titan and CPE executed a "Master Accounts

Receivable Purchase and Security Agreement" (the "Master Agreement") pursuant to which Titan and CPE agreed that CPE would periodically purchase accounts receivable from Titan. The Invoice was one of the accounts receivable that CPE purchased from Titan for an advance of $100,000.16. On February 9, 2006, Prismatic received a Notice of Assignment of the Invoice to CPE. The Notice informed Prismatic that the invoices should now be paid to CPE. It also requested that Prismatic sign an acknowledgment to verify that the "invoices are true and accurate and due and payable by your company" (the "Acknowledgment"). Prismatic's Executive Vice President, David Temeles, signed the Acknowledgment and returned it to CPE by fax. After receiving the signed Acknowledgment, CPE authorized its bank to wire $100,000 to Titan.

On March 15, 2006, Prismatic sent a letter to CPE, confirming a telephone conversation which occurred the day before, the subject of which was "Titan Architectural Products Invoice Approval Withdrawal." In the letter, Prismatic wrote that the Invoice submitted by Titan was "at best... totally in accurate, at worst may be a fraudulent submission, as Titan has ordered only a small portion of the material billed for and has not paid for any material." (Temeles Aff. Ex. F.)

The following day, on March 16, 2006, Prismatic wrote Titan informing it that Prismatic had "instructed Capitalplus that the receivable previously confirmed by Prismatic Development Corporation as due and payable was in fact totally inaccurate, and that they should discontinue any payment against the same." (Id. Ex. G.) Further, Prismatic wrote "[i]t has now become clear that your invoice was at best a gross overstatement and at worst a fictional and possibly fraudulent representation." (Id.) And advised Titan that if no response was received, Prismatic

**NOT FOR PUBLICATION**

would "seek whatever remedies are available to [it] including the filing of criminal charges if appropriate." (Id.)

According to Prismatic, because Titan had misrepresented its off-site storage of the metal wall panels, and because it was unable to proceed with the project and had in fact abandoned it, Prismatic terminated the Subcontract in accordance with its terms. The Subcontract contained a provision which allowed Prismatic to terminate the Subcontract and recover any costs incurred in completing the work. (Id. Ex. A ¶ 15.) According to Prismatic, it incurred total costs of $844,977.02 to complete the work which Titan was to have done. (Id. Ex. H & J.)

On April 6, 2006, Prismatic informed CPE, by way of letter, that the billing submitted by Titan was "in fact a fictitious bill for material stored" and that it could not make payment on the invoice. (Applegate Decl. Ex. G.)

CPE has filed this action against Prismatic seeking to recover the invoice amount of $199,044.90 plus interest, attorneys' fees and costs, consequential damages and any other relief the Court deems relevent. (Compl.) CPE has alleged contract based claims – breach of contract (Count 1), collection of book account (Count 2), account stated (Count 3), quantum meruit (Count 4), unjust enrichment (Count 5), – and tort based claims – fraud (Count 6), negligent misrepresentation (Count 7), promissory estoppel (Count 8), and equitable estoppel/estoppel in pais (Count 9).

The parties agreed that "the factual and legal issues may be such as to be susceptible to resolution on summary judgment" prior to the taking of discovery. (Ltr. from Glucksman dated

**NOT FOR PUBLICATION**

Jan. 28, 2008, so ordered by U.S.M.J. Cecchi on Jan. 31, 2008, Dkt. Entry 10.) Both sides have now moved for summary judgment.

**LEGAL STANDARD**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See id. at 248. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The non-moving party must go beyond the pleadings and, by affidavits or other evidence, designate specific facts showing that there is a genuine issue for trial. Celetex, 477 U.S. at 324; Fed. R.

Civ. P. 56(e). "[C]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253 (1968).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

**ANALYSIS**

**A. Plaintiff's Equitable Estoppel Argument for Summary Judgment**

The plaintiff's central argument in its summary judgment motion is that because the defendant signed the Acknowledgment that the invoice was "true and accurate and due and payable," it is equitably estopped from denying liability on the Invoice.

Equitable estoppel is "an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law, that prohibits a party from repudiating a previously taken position when another party has relied on that position to his detriment." Casamasino v. City of Jersey City, 158 N.J. 333, 354 (1999). "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either or property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his

**NOT FOR PUBLICATION**

position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." Highway Trailer Co. v. Donna Motor Lines, Inc., 26 N.J. 442, 449 (1966). "Such an estoppel can arise when one through culpable negligence induces another to believe certain facts to exist and such other reasonably relies and acts on such belief. Imposition of an estoppel in that setting is designed to assure that the loss is borne by the party who made the injury possible or could have prevented it." Foley Mach. Co. v. Amland Contractors, Inc., 209 N.J. Super. 70, 75 (App. Div. 1986).

Courts have applied the doctrine to preclude defendants' from raising certain defenses if they previously had made representations to the plaintiff which the plaintiff reasonably relied on to its detriment. See e.g., Bechte v. Robinson, 886 F.2d 644, 650 (3d Cir. 1989)(holding that defendant is equitably estopped from pleading statute of limitations as a defense); Highway Trailer, 26 N.J. at 449 (holding that defendant is estopped from raising defense of defect in presentation of claim when previous conduct had led plaintiff to believe that claim had been adequately presented); Selective Ins. Co v. Coach Leasing, 2008 WL 2404183, at *9 (N.J. Super. App. Div. June 16, 2008)(holding that defendant is precluded from asserting a defense on equitable estoppel grounds).

The burden of proving estoppel is on the party invoking the doctrine, here the plaintiff. Messa v. Omaha Prop. & Cas. Ins. Co., 122 F. Supp. 2d 523, 532 (D.N.J. 2000). "The essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." Malley v.

**NOT FOR PUBLICATION**

Dep't of Energy, 109 N.J. 309, 317 (1987); Horsemen's Benevolent & Potection Ass'n v. Atlantic City Racing Ass'n, 98 N.J. 445 (1985)("[E]ssential to a finding of [equitable] estoppel is a misrepresentation of material fact by one party and an unawareness of the true facts by the party seeking an estoppel."). "A party's reliance is reasonable if 'the party claiming the estoppel did not know or would not have known that its adversary's conduct was misleading.'" Messa, 122 F. Supp. 2d at 532 (quoting Heckler v. Cmty. Health Servs., 467 U.S. 51, 59 (1984)). "Equitable estoppel requires that the party asserting it take 'reasonable' steps to ascertain the truth of the facts upon which it relies." In re Hunt's Pier Assoc., 143 B.R. 36, 45-46 (Bkrtcy. E.D.Pa. 1992) (citing Foley, 209 N.J. Super. at 75-76).

The plaintiff argues that the defendant's acknowledgment that the invoice was "true and accurate and due and payable" was a misrepresentation that the plaintiff reasonably relied on to its detriment, the payment to Titan for the invoice. Therefore, according to the plaintiff, the defendant should be equitably estopped from asserting defenses to plaintiff's claims to recover on the invoice. The defendant on the other hand answers that it was reasonably relying on a representation by Titan that the goods in question were actually stored at an off-site location when it made the statement. Further, the defendant contends that the validity or invalidity of the Invoice is largely irrelevant and that its defense to the plaintiff's claim is based on damages suffered by Prismatic due to Titan's abandonment of the Project and the resultant termination for default under the Subcontract. The defendant in essence contends that the Acknowledgment was not a waiver of defenses and that any defenses the defendant could have asserted against Titan can be asserted against its assignee. The defendant also argues that the record and common sense

do not support the reasonableness of CPE's reliance on only the Acknowledgment as the basis for its investment. The defendant points out that it is common knowledge that account receiving financing of progress payments under an ongoing construction contract, without a waiver of defenses by the account debtor, is extremely risky. Defendant argues that CPE's awareness of the risks was reflected in the fact that CPE only advanced 50% of the receivable even with the Acknowledgment.

"Equitable estoppel is an equitable doctrine, and is subject to the discretion of the trial court." Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 242 (3d Cir. 1994). Since the doctrine is based on "fundamental fairness" it requires the trial judge to make a determination based on where the equities lie. It is "designed to assure that the loss is borne by the party who made an injury possible or could have prevented it." In re Hunt's Pier, 143 B.R. at 44 (citing Miller v. Miller, 97 N.J. 154, 163 (1984)). There are questions of material fact as which of these parties was actually in the best position to have prevented this loss. A further factual record needs to be developed before the Court can determine where equity lies. The plaintiff's motion for summary judgment is denied.

Alternatively, plaintiff contends that it is entitled to summary judgment because the evidence is so one-sided that no reasonable jury could find for Prismatic. The central piece of evidence that it offers to support this contention is the signed Acknowledgment which the plaintiff contends is clear and unambiguous. However, for the reasons discussed later in the context of the arguments made by the defendant in moving for summary judgment, the Court

disagrees that the evidence is so unambiguous and finds that issues of material fact exist. Plaintiff's summary judgment motion based on this argument is also denied.

**B. Defenses Against Titan on the Contract Claims**

The defendant's first argument for summary judgment is that the plaintiff's claims, as the assignee from Titan, are subject to the terms of the subcontract and any defenses or claims for recoupment arising from the subcontract. The defendant says that under the New Jersey version of the Uniform Commercial Code ("UCC"), "[u]nless an account debtor [Prismatic] has made an enforceable agreement not to assert defenses or claims ... the rights of the assignee [Capital] are subject to ... all terms of the agreement between the account debtor [Prismatic] and assignor [Titan] and any defense of claim in recoupment arising from transaction giving rise to the contract." N.J.S.A. 12A:9-404(a); see also 21st Capital Corp. v. Tiffany & Co., 2008 WL 313455, at *2 (N.J. Super. App. Div. February 6, 2008). The defendant claims that Titan defaulted under the Subcontract by failing to supply the Subcontract materials and abandoning the job. And that, under the Subcontract, Prismatic was entitled to withhold further payments from Titan and apply such payments to the costs of completing Titan's Subcontract. Because Prismatic incurred costs far greater than the Subcontract price for the performance of Titan's scope of work, it owes nothing on the Invoice.

Plaintiff's response is that the U.C.C. does not apply to this action because it was purely an "assignment of receivables for the purposes of collection" to which, under N.J.S.A. §12A:9-109(d)(5), the U.C.C. does not apply: CPE does not stand in the shoes of Titan, and its rights against Titan arise under the February 10, 2006 Acknowledgment which stated merely that payment "should be made payable to an mailed directly to" CPE.

**NOT FOR PUBLICATION**

The Court need not decide whether the U.C.C. applies, even though it appears that it would apply under the New Jersey Appellate Division's recent decision in 21st Capital Corp. v. Tiffany & Co., 2008 WL 313455, at *2 (applying the U.C.C. to a collection action by assignee of an account receivable), since the result would be the same under both the U.C.C. and the common law. "The [Uniform Commercial] Code has continued the common law view that an assignee of a ... receivable, stands in the shoes of the assignor. Generally speaking, the assignee at common law was subject to the equities and defenses which the account debtor could have asserted against the assignor prior to the assignment." James Talcott, Inc. v. H. Corenzwit & Co., 76 N.J. 305 (1978)(internal citations omitted); see also N.J. Layer's Fund for Client Protection v. Pace, 374 N.J. Super. 57, 66 fn.8 (App. Div. 2005)(recognizing "general rule" of "an assignee's rights rising no higher than the rights of the assignor").

Alternatively, the plaintiff argues that even under the U.C.C. the defendant is estopped from denying liability because of the Acknowledgment form. The Official Comment to N.J.S.A. 12A:9-403 states that this provision, which sets out the requirements for an agreement not to assert defenses against the assignee "does not displace an assignee's right to assert that an account debtor is estopped from asserting a claim or defense."

Finally, the plaintiff argues that the issue of Prismatic's losses due to Titan's alleged breach has not been the subject of discovery so the only evidence that the defendant has put forth are its own internal and self-serving documents. This argument is persuasive. The Court can not now grant summary judgment. Whether the defendant Titan defaulted in its obligations under the Subcontract and whether the defendant is entitled to a setoff against the Invoice due to

Titan's breach are questions of material fact which require further factual development and jury determination.

### C. Economic Loss Doctrine

The defendant argues that the plaintiff can not circumvent the U.C.C. and convert its contract claim as an assignee into claims for tortious conduct. Plaintiff has brought a number of non-contractual claims – fraud, negligent misrepresentation, promissory estoppel and equitable estoppel.

"The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." Bracco Diagnostics Inc. v. Bergan Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002). The doctrine "bars a plaintiff from recovering purely economic losses suffered as a result of the defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property." Pub. Servs. Enter. Group, Inc. v. Phila. Elec. Co., 722 F. Supp. 184, 193 (D.N.J. 1989). The justification for the doctrine is that "[t]ort principles, such as negligence, are better suited for resolving claims involving unanticipated injuries, and contract principles are generally more appropriate for determining claims for consequential damages that parties have or could have addressing in their agreement." Bubbles N' Bows, LLC v. Fey Pub. Co., 06-cv-5391 (FLW), 2007 WL 2406980, at *10 (D.N.J. Aug. 20, 2007) (citing Spring Motors Distib., Inc. v. Ford Motor Co., 98 N.J. 555, 589-80 (1985).

Contrary to plaintiff's contention, the economic loss doctrine has been applied not only in products liability cases, but also in actions arising out of contracts for services and mixed goods/services contracts, including construction contracts such as the one between Titan and

**NOT FOR PUBLICATION**

Prismatic. See e.g., Bracco, 226 F. Supp. 2d at 562-65 (applying economic loss doctrine to bar fraud claim arising under wholesale distribution agreement); Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Group, Inc., 05-cv-3362 (GEB), 2007 WL 174710, at *4 (D.N.J. Jan. 22, 2007) (applying economic loss doctrine to bar fraud claim arising under construction subcontract and stating that "while the doctrine has predominantly been applied in connection with transactions for goods, it has also been found, in New Jersey, to apply to contracts for services.").

While the state of New Jersey law in the application of the doctrine has been defined by the Third Circuit as a "morass," one divining principle that has been applied by courts in this district is whether the fraud is extrinsic to the underlying contract claim. Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 144 (3d Cir. 2001) ("The New Jersey District Courts still hold that fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action."); Emerson Radio Corp. v. Orion Sales, Inc., 95-cv- 6455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000), aff'd in part, rev'd in part on other grounds, 253 F.3d 159 (3d Cir. 2001) (explaining that the critical issue in determining whether a tort claim can be asserted alongside a breach of contract claim is "whether the allegedly tortious conduct is extraneous to the contract."). Here, the conduct that the plaintiff is complaining of in its tort claims is extrinsic to the contract between Titan and Prismatic; it is an action taken by Prismatic in relation to CPE – the signing of the Acknowledgment. Plaintiff's fraud, negligent misrepresentation, promissory estoppel and equitable estoppel claims are not barred by the economic loss doctrine because they do not arise out of the same facts underlying the breach of contract claims.

**NOT FOR PUBLICATION**

**D. Equitable Estoppel**

The elements a plaintiff must establish to make out an equitable estoppel claim are the same as those it must establish to bar the defendant's ability to raise a defense on equitable estoppel grounds: "(i) a material misrepresentation, (ii) reasonable reliance upon the misrepresentation, and (iii) damage resulting from the misrepresentation." Hein v. F.D.I.C., 88 F.3d 210, 221 (3d Cir. 1996) (citing Heckler v. Community Health Serv., 467 U.S. 51, 59 (1984)). Equitable estoppel applies whether the misrepresentation is made intentionally or negligently. In re Price, 361 B.R. 68, 78 (Bkrtcy. D.N.J. 2007).

The defendant contends first, that it did not make the misrepresentation intentionally to mislead, but merely relied on representations made by Titan. Second, the defendant advances that the plaintiff's reliance[1] on the representation was not reasonable because the plaintiff should have conducted its own independent due diligence rather than merely relying on the defendant's representations: "Equitable estoppel requires that the party asserting it take 'reasonable' steps to ascertain the truth of the facts upon which it relies," In re Hunt's Pier Assoc., 143 B.R. at 45-46 (citing Foley, 209 N.J. Super. at 75-76), something which the plaintiff failed to do. Whether the defendant act negligently in making the representation and whether the plaintiff was reasonable in relying on this representation are questions of material fact which require factual discovery and jury determinations. Summary judgment is denied on the equitable estoppel claim.

---

[1] The defendant also argues that the plaintiff did not in fact rely on the Acknowledgment because it wired the funds to Titan a few minutes before receiving the faxed Acknowledgment. The plaintiff has successfully rebutted this argument by submitting a Declaration from the Vice President of its bank affirming that in fact that bank operates on Mountain Standard Time, (Decl. Kristy Walker), which establishes that CPE wired the funds to Titan only after receiving the Acknowledgment.

**NOT FOR PUBLICATION**

**E. Promissory Estoppel**

To state a claim for promissory estoppel the plaintiff must establish:

> (1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise.

Madison Fin., LLC v. Hunts Point Co-op Mkt., 01-cv-3830, 2008 WL 724362, at *13 (D.N.J. March 17, 2008) (Walls, J.) (quoting The Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 479 (App. Div. 1978)). "'A clear and definite promise,' the first element, is 'the [*s]ine qua non* of a promissory estoppel claim.'" Id. (quoting Zarrilli v. John Hancock Life Ins. Co., 231 Fed. Appx. 122, 124 (3d Cir. 2007)).

The defendant contends that the plaintiff's promissory estoppel claim fails because the plaintiff has never pleaded or even alleged a promise. However, the representation that the invoice is "true and accurate and due and payable" could be construed as a promise to pay the invoice which is actionable under promissory estoppel. See id. at 13 (holding that signature of acknowledgment form which stated that the "sum is owed absolutely and [defendant] ha[d] no right to counterclaim, contra claim, set off or any other right of deduction from such sum" was a promise for collateral estoppel purposes). The term "payable" is a term which has a particular meaning – it means "that which is to be paid; justly due; legally enforceable. A sum of money is said to be payable when a person is under obligation to pay it." Jamouneau v. Harner, 16 N.J. 500, 512 (1955)(citing Black's Law Dictionary (4th Ed.)). Just as party's failure to read, or carefully read, the terms of an Acknowledgment form is not an defense, Madison, 2008 WL 724362, at 14, the failure to understand the legal significance of a document that a party is signing is also not a defense.

Defendant further argues that even if a promise were deemed to exist, the plaintiff can not claim that its reliance was reasonable. As discussed, whether the plaintiff's reliance on the Acknowledgment was reasonable is a question of material fact. This is particularly true in light of the fact that while the defendant may have acknowledged that the invoice was "payable," the defendant never explicitly waived the defenses that it may have had against Titan for payment on the Invoice. Summary judgment is denied on the promissory estoppel claim as questions of material fact exist which require factual development and jury determination.

**F. Common Law Fraud**

"The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). The defendant contends that the plaintiff can not make out a claim for fraud because it is undisputed that at the time David Temeles signed the Acknowledgment, he was unaware that Titan's representations that the Subcontract material were stored offsite was untrue. In support of this, the defendant points to the Affirmation of David Temeles, the letters sent by Prismatic to Titan once it learned of the misrepresentation threatening criminal charges, and the fact that Prismatic eventually terminated Titan's Subcontract for default. The defendant also makes an appeal to logic arguing that it had nothing to gain and everything to lose by misrepresenting the status of the Invoice. Additionally, the defendant argues that the plaintiff's reliance was not reasonable.

**NOT FOR PUBLICATION**

The plaintiff replies that discovery has not been taken as to this claim, and therefore summary judgment must be denied.[2]

On their face, without more, the plaintiff's allegations do not constitute fraud. Even though, as the plaintiff points out, discovery has not yet been taken on this claim, the facts alleged totally or individually simply do not constitute fraud. The plaintiff specifically alleges that Prismatic made the representation in the Acknowledgment that the Invoice was "true and accurate, and due and payable" (Compl. ¶34), that it "made the foregoing representations at a time when it knew or should have known that it was going to claim or allege that the invoice was inaccurate[,] that the Invoice was not due and/or payable[,] and/or that it would not pay for the Goods sold." (Compl.¶ 35.) As an initial matter, Federal Rule of Civil Procedure 9(b) requires that fraud be plead with particularity. The purpose of Rule 9(b) is to "place the defendants on notice of the particular misconduct with which they are charged, and to safeguard defendants against spurious charged of immoral or fraudulent behavior." Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004). "Statements as to future or contingent events, as to expectations and probabilities, or as to what will be or is intended to be done in the future, do not constitute misrepresentations even though they turn out to be false, at least where they are not made with intent to deceive, and where the parties have equal means of knowledge." Angrisani v. Capital Access Network, 175 Fed. 554, 556 (3d Cir. 2006)(citing Middlesex County Sewerage Auth. v.

[2] Plaintiff's second argument in defense of summary judgment is that "even if Mr. Temeles did not know the actual state of affairs, his admission now – that he did not fully investigate the accuracy of the Invoice before claiming that same was accurate – may legally allow Prismatic to escape the fraud charge but it exposes Prismatic to liability for wrongs other than fraud." (Pl's Opp. at 17.) This argument seems to concede that the plaintiff has no basis for the allegation that the defendant was aware of the falsity of its representation at the time it was made.

**NOT FOR PUBLICATION**

Borough of Middlesex, 74 N.J. Super. 591, 605 (App. Div. 1962)). Here, other than a generalized allegation that the defendant "knew or should have known" that it was going to claim that the invoice was inaccurate in the future, the plaintiff has not alleged any intent to deceive on the part of the defendant. The plaintiff has pointed to nothing which would suggest that the defendant knew that the statement was incorrect or that the correct information was actually available to the defendant. Such an intent would be utterly illogical as well. The defendant had no motive to intentionally make such a misrepresentation. Evidence to the contrary is absent. The defendant had nothing to gain but the trouble of a law suit such as this one by making the misrepresentation. The plaintiff's allegation of fraud fails to meet the heightened pleading requirements of Rule 9(b) and is dismissed. See In re Cendent Corp. Sec. Litig., 76 F. Supp. 2d 539, 548 fn. 4 (D.N.J. 1999) (Walls, J.).

**CONCLUSION**

The plaintiff's motion for summary judgment is denied. The defendant's motion for summary judgment is granted on the fraud claim, and denied as to all other claims.

**s/ William H. Walls**
United States Senior District Judge

**Appearances:**

Joel R. Glucksman, Esq.
Frank P. Kapusinski, Esq.
Scarinci & Hollenbeck, LLC
1100 Valley Brook Aven., P.O. Box 790
Lyndhurst, N.J. 07071-0790
Attorney for Plaintiff

**NOT FOR PUBLICATION**

Richard L. Abramson, Esq.
Peckar & Abramson, P.C.
70 Grand Avenue
River Edge, N.J. 07661
Attorney for Defendant